UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRADLEY, ALLEN & STAGG, LLC                CIVIL ACTION

VERSUS                                      NO. 22-2819

RAYMOND C. REGGIE, THE                      SECTION: "J"(5)
UNITED STATES OF AMERICA,
DEPARTMENT OF JUSTICE

## ORDER AND REASONS

Before the Court are two motions for summary judgment, the first filed by defendant/crossclaim plaintiffs, the United States of America **(Rec. Doc. 90)** and the second filed jointly by defendants/crossclaim plaintiffs Cadence Bank, successor-in-interest to BancorpSouth Bank ("Cadence Bank") and Regions Bank **(Rec. Doc. 91).** Defendant-in-interpleader and cross-claim Defendant, Raymond C. Reggie filed an opposition to the motions (Rec. Doc. 104). The United States filed a memorandum in support of Cadence Bank and Regions Bank's joint motion (Rec. Doc. 105), to which Reggie filed a "reply" (Rec. Doc. 109). The United States filed a reply in support of its motion (Rec. Doc. 108), as did Cadence Bank and Regions Bank (Rec. Doc. 110). Having considered the motions and memoranda, the record, and the applicable law, the Court finds that Cadence Bank and Regions Bank's motion should be **GRANTED,** and the United States' motion should be **DENIED.**

## FACTS AND PROCEDURAL BACKGROUND

On November 29, 2005, the United States obtained a judgment against Reggie in *United States of America v. Raymond C. Reggie*, Docket Number 05-CR-32 in this Court. Reggie pled guilty to one count of conspiracy to commit bank fraud and one

1

count of bank fraud. The Court sentenced Reggie to one year and one day in prison and ordered him to pay $3,474,524.40 in restitution to Hibernia National Bank (now Capital One) and 3,300,830.00 to BizCapital (now BizCapital BIDCO I, LLC). To enforce the restitution judgment, the United States recorded a lien in the public records of Lafayette Parish, thereby creating a judicial mortgage on Reggie's immovable property located in Lafayette Parish.

On the date the judgment was recorded, Reggie owned an interest in a certain immovable property located in Lafayette Parish (the "Property"). On August 15, 2022, Reggie and his co-owners sold the property. As the escrow/closing agent for the sale, Plaintiff Bradley, Allen, & Stagg, LLD dba Bradley Moreau Title ("Bradley Moreau Title") received $1,448,553.17 as Reggie's share of the sale proceeds at closing.

The United States maintains that, according to its payment history, Reggie still owes a balance of $6,737,748.54 of the restitution amount. However, Reggie argues[1] that the restitution debt was satisfied and extinguished through payments to Capital One and BizCapital under various civil settlement agreements between those restitution victims and other joined crossclaim-defendants: Regions Bank, Cadence Bank, and Certain Underwriters at Lloyd's, London.[2]

---

[1] On October 7, 2020, Reggie filed a motion for satisfaction of restitution order in his criminal case on this argument as well. *United States v. Reggie*, No. 05-52, Rec. Docs. 73, 86, 98. This Court denied the motion without prejudice, after Reggie took no further action to obtain information necessary to carry his burden of satisfying his restitution order. (Rec. Doc. 84) On July 28, 2023, he filed a subsequent motion for satisfaction of restitution, again relying on the civil settlement payments. (Rec. Doc. 103). The United States opposed the motion (Rec. Doc. 104), and the motion is still pending. Reggie's motion in his criminal case, filed after the instant motions, raises identical issues and contested claims as the instant motions.

[2] The Society of Lloyd's ("Lloyds), appearing specially on behalf of cross-defendants named as "Certain Underwriters at Lloyd's, London, Subscribing to Catastrophic Risk Integrated Insurance Program/Policy No. 509/QA494798 ("Certain Underwriters at Lloyd's") also filed a response to the motions for summary judgment. (Rec. Doc. 97). The response is not determinative of the instant motion; Lloyd's notes that Lloyd's is a placeholder in this action, and if and when any interested underwriters at Lloyd's are identified, Lloyd's will "bow out" and let the interested

Because of Reggie's and the United States' disputed claims to the funds, Bradley Moreau Title could not determine the party to whom the sale proceeds were due and instituted the present interpleader action, depositing $1,448,553.17 into the Registry of the Court. In its answer, the United States brought a cross claim against Reggie, stating that the United States' claims to the proceeds are superior to Reggie's, and joined other parties with a potential interest in the interpleader funds. Included among the joined parties were Capital One and BizCapital, as Reggie's restitution victims, and the three entities that paid these victims in the civil settlement agreements (Regions Bank, Cadence Bank, and Lloyd's).

At a status conference, the Court dismissed both Capital One and BizCapital because each disclaimed any interest in the funds, contending that their settlements covered the same losses as involved in the criminal case. The Court also ordered the parties to confer and file a proposed schedule for future motions for summary judgment for release of the interpleader funds. The United States, Cadence Bank, and Regions Bank filed the instant motions in accordance with that briefing schedule.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

---

underwriters step in and claim or disclaim their rights to the interpleader funds. *Id.* at 1. Because no underwriters have yet been identified, and because Lloyd's itself is not an insurer, Lloyd's admits in the response that it cannot oppose or acquiesce the relief sought in the motions. *Id.* Lloyd's states that it understands that Certain Underwriters at Lloyd's time to seek recovery of the interpleader funds appears to have lapsed, but that nothing in the response or its answer should be construed as a waiver or disclaimer of the Certain Underwriters at Lloyd's rights to recover restitution payments in any further civil action. *Id.*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts

4

to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

Cadence Bank and Regions Bank (the "Banks") move for summary judgment regarding their entitlement to pro-rata portions of the $1,448,553.17 in the registry of the Court (the "Proceeds") that is the basis of this interpleader action. (Rec. Doc. 91-1). The Banks argue that, because they paid compensation to Reggie's restitution victims for the same losses covered by Reggie's criminal restitution judgments, this Court is required to order that Reggie pay restitution to the Banks. *Id.* at 2. The Banks also argue that Reggie lacks constitutional standing (specifically the element injury-in-fact) to challenge the Banks' entitlement to restitution funds, because no matter the ultimate recipient of the restitution payments, Reggie remains liable for paying the same restitution amount (Rec. Doc. 91-1, at 15-18). The United States filed a supportive response to the Banks' motion, emphasizing that there is no genuine dispute of law that the Court is required to award restitution to the Banks as subrogated or substitute victims. (Rec. Doc. 105, at 4). The United States also filed a motion for summary judgment arguing that, if the Court finds the Banks are not entitled to the interpleader funds, the Proceeds should be assigned to the Crime Victims Fund, rather than returned to Reggie. (Rec. Doc. 90-3).

5

In response, Reggie recounts the background of his criminal case: he owned a business, Media Direct, which banked at Union Planters Bank (now Regions Bank). (Rec. Doc. 104). His account showed an extraordinary and suspicious level of activity, and in 1999, the MediaDirect account was overdrawn by $4 million as a result of Reggie's check-kiting scheme. *Id.* at 2. Union Planters converted this overdraft into a loan and requested MediaDirect pay off the loan and transfer its accounts elsewhere. *Id.* BizCapital and Hibernia extended loans to Media Direct to repay Union Planters, and both BizCapital and Hibernia communicated directly with Union Planters regarding the loans. *Id.* BizCapital and Hibernia also communicated with Media Direct's banker at The Business Bank to confirm Media Direct's accounts receivable from the United States Census Bureau, which turned out to be fake. *Id.*

In 2002, BizCapital (and later Hibernia) sued Union Planters and Business Bank for their roles in aiding Media Direct and Mr. Reggie obtain credit. *Id.* at 3. BizCapital and Hibernia (at this point, Capital One) settled their claims against Union Planters (through its successor, Regions Bank), in 2008. As to Business Bank, BizCapital and Capital One proceeded to trial in 2010, and a jury reached a verdict on March 8, 2010. *Id.* at 3-4. After the verdict, the parties moved to vacate and seal the jury verdict, and BizCapital and Capital One settled their claims against BancorpSouth Bank (on behalf of its predecessor, Business Bank). *Id.* at 4. Hibernia's insurer, Certain Underwriters at Lloyd's London, agreed to pay for a portion of the losses it sustained in the lawsuits. *Id.*

6

So, in sum, the Banks (through their predecessors, the Business Bank/Bancorp South and Union Planters) each paid civil settlements to Capital One and BizCapital's predecessors, and those settlements are connected to the loans Capital One and BizCapital made to Reggie and his company. Because of those loans, Capital One (previously Hibernia) and BizCapital were named restitution victims in Reggie's criminal judgment. The Banks argue that, because they compensated Reggie's restitution victims' losses, they are subrogated to the right to receive the Proceeds in this case. However, in his opposition memorandum, Reggie argues that the Banks were joint tortfeasors, not indemnitors, because the Banks paid settlements in lawsuits filed against them for "their role in aiding Mr. Reggie's fraud." (Rec. Doc. 104, at 9). Because the basis of the Banks' liability to BizCapital and Capital One stems from their own misconduct, Reggie argues, the Banks' settlement payments to BizCapital and Capital One were not the result of an obligation to pay on behalf of Reggie, and he should not be required to reimburse them. *Id.* at 10-17.

However creative Reggie's arguments are, Reggie ignores the plain language of the statute underlying his restitution obligations as well as his own admissions that the Banks compensated Biz Capital and Capital One for their losses as Reggie's restitution victims. The Mandatory Victims Restitution Act (MVRA) is a statutory scheme of mandatory restitution to victims of certain offenses, regardless of the preference of the victims. *See United States v. Aman*, 616 F. App'x 612, 614 (4th Cir. 2015) (citing *United States v. Curran*, 525 F.3d 74, 84 (1st Cir. 2008)). The procedural provision of the MVRA states that, "in no case shall the fact that a victim has received

7

or is entitled to receive compensation with respect to a loss from insurance or *any other source* be considered in determining the amount of restitution." 18 U.S.C.A. § 3664 (emphasis added). However, the statute also provides that "no victim shall be required to participate in any phase of a restitution order." *Id.* at § 3664(g)(1). Here, the restitution victims named in Reggie's restitution judgment (Capital One and BizCapital) have since declined to participate in the instant phase of litigation regarding his restitution.[3]

Even if a victim disclaims their right to restitution payments, "the Government's penal objectives in imposing and collecting restitution cannot be waived by the victim." *United States v. Ridgeway*, 489 F.3d 732, 737 (5th Cir. 2007). And if "a third party has already reimbursed the victim's losses, Section 3664(j)(1) of the MVRA simply shifts *payment* of the restitution amount calculated under § 3663A(b) directly to that party." United States v. Berry, 795 F. App'x 229, 237 (5th Cir. 2019) (quoting *United States v. Thompson*, 792 F.3d 273, 279 (2d Cir. 2015)) (emphasis in original). Section 3664(j) states that,

> (j)(1) If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

---

[3] The United States also notes that the MVRA goes on to state that a victim "may at any time assign the victim's interest in restitution payments to the Crime Victims Fund in the Treasury without in any way impairing the obligation of the defendant to make such payments." 18 U.S.C.A. § 3664(g)(2). The statute provides no exception to the mandatory nature of the restitution, nor does it provide that a victim may prevent the Court from assigning that victim's interest in restitution to the Crime Victims Fund. *See United States v. Johnson*, 378 F.3d 230, 245 (2d Cir. 2004) ("Although § 3664(g)(2) authorizes victims to make such an assignment, it does not preclude the Court from doing so"). The United States argues that assigning the disclaimed restitution payments to the Crime Victims Fund would advance the mandatory, punitive purpose of restitution under the MVRA and assign any of the Proceeds not awarded to Regions and Cadance to the Crime Victims Fund. (Rec. Doc. 90-3, at 8). Considering the order that follows, it is not necessary to resolve this assignment.

> (2) Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—
> (A) any Federal civil proceeding; and
> (B) any State civil proceeding, to the extent provided by the law of the State.

18 U.S.C.A. § 3664(j). "This provision avoids a windfall to the victim if the victim received both insurance and restitution payments for the same loss and a windfall to the perpetrator if he avoided payment of restitution because of the fortuity of insurance coverage for the loss caused by his criminal act." *United States v. Stile*, No. 1:11-CR-00185-JAW, 2017 WL 5586370, at *10 (D. Me. Nov. 20, 2017). Section § 3664(j) is also punitive, "ensure[ing] that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society." Catherine M. Goodwin, FEDERAL CRIMINAL RESTITUTION § 5:24 (2022 ed.) (citing S. Rep. No. 104-179, at 12 (1995)).

In his criminal case, the Court ordered Reggie to pay $3,474,524.40 in restitution to Hibernia Bank (now Capital One) and $3,300,830.00 to Biz Capital. Judgment and Commitment, *United States v. Reggie*, No. 05-32, Rec. Doc. 29, at 5 (E.D. La. 2005). Here, there is no genuine dispute of fact that the victims of Reggie's crimes have been fully compensated for the losses related to Reggie by Regions Bank and Cadence Bank. The restitution victims, the victim-compensators, and Reggie have all agreed that the Banks' settlement payments were for the losses of Capital One and Biz Capital as restitution victims of Reggie. On at least six different occasions in pleadings in this case and in his criminal case, Reggie has stated that

9

his criminal restitution was satisfied and extinguished by the Banks' settlement payments for the same losses by Capital One and Biz Capital in his criminal judgment. (List of Pleadings, Rec. Doc. 110, at 4). Even in his opposition to summary judgment, Reggie states that "the Banks' civil settlements were for the same loss as Mr. Reggie's conduct." (Rec. Doc. 104, at 15). But now, Reggie presents a new, unsupported argument: that the Banks paid compensation to the restitution victims, which means they participated in Reggie's criminal conduct and precludes application of § 2664(j)(1). *Id.* at 15-17. The Court rejects this argument; the government never charged Regions Bank or Cadence Bank for their participation in Reggie's criminal activity or designated them as unindicted co-conspirators. The Court also declines to examine or make a finding as to the Banks' liability for torts in a case not before this Court based on Reggie's conclusory position that the Banks were also liable for the misconduct underlying the restitution debt.

Crucially, Reggie has not yet paid the debt he owed to the victims and society. The Banks paid his victims for him. Therefore, under the unambiguous wording of § 3664(j)(1) ("the court *shall* order that restitution be paid to the person who provided…the compensation…"), Reggie is required to pay restitution to Regions Bank and Cadence Bank, as the sources that provided compensation to the victims.[4]

## **CONCLUSION**

Accordingly,

---

[4] Even if the Banks were not entitled to the interpleader funds, Reggie would not be entitled to them, because the Court could assign the funds to the Crime Victims Fund according to 18 U.S.C § 3664(g). Additionally, because the Court did not reach the question of Reggie's claim to the Proceeds, the Court will not consider whether Reggie has standing to bring such a claim.

**IT IS HEREBY ORDERED** that the motion for summary judgment filed by defendant/crossclaim plaintiffs, the United States of America **(Rec. Doc. 90)** is **DENIED.**

**IT IS FURTHER ORDERED** that the motion for summary judgment filed jointly by defendants/crossclaim plaintiffs Cadence Bank, successor-in-interest to BancorpSouth Bank ("Cadence Bank") and Regions Bank **(Rec. Doc. 91)** is **GRANTED.** Reggie's restitution victims, Biz Capital and Capital One have been paid in full and Cadence Bank and Regions Bank are entitled to restitution in the pro-rata amounts of their respective payments to the restitution victims.

**IT IS FURTHER ORDERED** that Cadence Bank is awarded 45.65 percent ($661,245.52) and Regions Bank is awarded 54.35 percent ($787,288.65) of the interpleader Proceeds in the registry of the court.

**IT IS FURTHER ORDERED** that Reggie is not entitled to any portion of the interpleader Proceeds in the registry of the Court.

New Orleans, Louisiana, this 28th day of August, 2023.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE